IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVAN EICHHORN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MNG 2005, Inc. a/k/a MNG Brands d/b/a CBD KRATOM,<br><br>Defendant. | CLASS ACTION<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiff Evan Eichhorn ("Plaintiff Eichhorn" or "Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself and all others similarly situated against Defendant MNG 2005, Inc. a/k/a MNG Brands d/b/a CBD Kratom ("Defendant" or "CBD Kratom") for Defendant's dangerous and misleading marketing and labeling related to the sale of Beverages containing kratom, a highly addictive substance.

**NATURE OF THE ACTION**

1. Defendant maintains retail stores nationally and in Pennsylvania called "CBD Kratom," where Defendant sells kratom-containing sodas, teas, and seltzers manufactured under its "Korthal's Collection" brand ("the Beverages"). Defendant consistently markets and labels the Beverages as safe, healthy, and energizing, going so far as to tell purchasers that the Beverages may be used as an exercise supplement. However, Defendant fails to warn consumers that kratom is a significant mood-altering agent, which can cause numerous physical and mental health consequences, including addiction.

{00265842 }

2. This class action seeks damages and equitable relief to remedy Defendant's failure to label the Beverages such that purchasers are warned of the risks of consuming them, as well as Defendant's misleading representations with respect to the Beverages' benefits and usage. Defendant withholds crucial safety information from consumers, promotes its Beverages as healthy, and capitalizes on the dependence that kratom may cause.

## THE PARTIES

3. Plaintiff Eichhorn is a resident of Haddon Heights, New Jersey. At all times relevant, Plaintiff Eichhorn purchased Beverages from Defendant at CBD Kratom retail stores located at 212 S 17th Street, Philadelphia, PA 19103, 524 South Street, Philadelphia, PA 19147, and 1601 Frankford Avenue, Philadelphia, PA 19125, and online on Defendant's website from his New Jersey residence.

4. Defendant MNG 2005, Inc. is a Missouri for-profit corporation headquartered in St. Louis, Missouri. It owns MNG Brands and CBD Kratom and operates dozens of CBD Kratom Retail stores in several states, including at least four (4) in the Philadelphia, Pennsylvania area. It also maintains a publicly accessible retail website where individuals may purchase kratom-containing products.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) as there is: diversity of citizenship between the Parties; the amount in controversy exceeds $75,000; and pursuant to 28 U.S.C. § 1332 (d) as there are 100 or more class members and the amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides and regularly conducts business in this District, is subject to the Court's personal

jurisdiction; a substantial portion of the events or omissions giving rise to Plaintiff Eichhorn's claims took place in this District; and many proposed Class Members reside in this District.

## FACTUAL BACKGROUND

**Risks Associated with Kratom and 7-OH**

7. Kratom, not to be confused with cannabis or CBD/Cannabidiol, is derived from a Southeast Asian plant.[1] It can be consumed in a variety of ways including smoking, capsules, powders, gummies, candies, and Beverages, such as those sold at CBD Kratom.[2]

8. Kratom is known to produce an opioid-like high, often characterized as euphoria. This high is the result of two psychoactive properties: mitragynine and 7-hydroxymytragynine (known commonly as "7-OH"), which interact with the mu-opioid receptors in the brain.[3] Mitragynine and 7-OH activate the same receptors in the brain as synthetic opioids such as heroin or oxycodone.

9. But 7-OH is extremely potent, estimated to be up to thirteen (13) times stronger than even morphine when it comes to impacting the body's opioid receptors.[4] 7-OH is found in very small amounts in the kratom plant itself.[5] But products sold in stores, such as the Beverages at CBD Kratom, contain much higher amounts of 7-OH than natural kratom.[6]

10. In addition to euphoria, kratom can cause heightened alertness and increased energy at infrequent or occasional low doses. In concentrated, routine, or high doses, kratom can cause

---

[1] Department of Justice/Drug Enforcement Administration, Kratom Drug Fact Sheet (April 2020) https://www.dea.gov/sites/default/files/2020-06/Kratom-2020_0.pdf.
[2] *Id.*
[3] *Kratom,* National Institute on Drug Abuse, https://nida.nih.gov/research-topics/kratom, (last visited on February 24, 2026).
[4] *7-OH and Kratom*, Missouri Department of Health & Senior Services, https://health.mo.gov/safety/foodsafety/kratom/index.php, (last visited March 3, 2026).
[5] *Id.*
[6] *Id.*

3

loss of appetite, hallucinations, confusion, nausea, sweating, dry mouth, gastrointestinal issues, tachycardia, psychosis, and liver damage.[7] In rare cases, death can occur.[8]

11. Kratom users quickly develop a tolerance to low doses and often feel compelled to consume repeated or increasing amounts of kratom to achieve the same energy boost and euphoric high. As a result, kratom addictions and other associated mental health conditions develop rapidly, in mere weeks.[9]

12. When individuals consume kratom, particularly products containing 7-OH, for extended periods of time and then attempt to stop – for instance after realizing they have developed a dependence or an addiction – they frequently suffer debilitating withdrawal symptoms, including dehydration, panic, nausea, diarrhea, muscle cramps, excessive sweating and chills, tremors, and insomnia. These side effects can last for several days, often prompting individuals to consume kratom again to end the pain and discomfort.[10]

13. Kratom addiction and withdrawal are serious medical conditions. Severe kratom withdrawal may be treated with prescription medications such as sublocade or suboxone, which are also used to treat heroin or opiate withdrawal.[11]

---

[7] Legislative Analysis and Public Policy Association, Regulation of Kratom in America, https://legislativeanalysis.org/wp-content/uploads/2022/10/Kratom-Fact-Sheet-FINAL.pdf.
[8] County of Los Angeles News Release, *Multiple Fatal Overdoses Tied to Synthetic Kratom Compound in Los Angeles County* (September 12, 2025), http://publichealth.lacounty.gov/phcommon/public/media/mediapubhpdetail.cfm?prid=5139; *see also* Helen Freund, Sam Ogozalek, Langston Taylor, and Hannah Critchfield, *Deadly Dose* (Dec. 7, 2023), Tampa Bay Times, https://project.tampabay.com/investigations/deadly-dose/kratom-overdose-deaths-florida-mitragynine-testing/.
[9] Austin G. Settle and Chong Yang, National Library of Medicine, *A Case of Severe Kratom Addiction Contributing to a Suicide Attempt*, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC9616552/.
[10] *Supra* n.1.
[11] Marissa Crane, American Addiction Centers, *Kratom Withdrawal Symptoms, Timeline & Detox Treatment*, https://americanaddictioncenters.org/withdrawal-timelines-treatments/kratom. (last visited February 9, 2026); *see also* A.C. Borges and D. Machado

14. Due to the significant health risks posed by kratom, several states (including Indiana, Tennessee, Vermont, Mississippi, Wisconsin, and Arkansas) have banned the sale of kratom altogether or intend to. The Arizona House of Representatives has introduced legislation requiring that "a processor or retailer that prepares, distributes, sells or exposes for sale a […food product or dietary supplement] that is represented to be a kratom product shall disclose on the product label the factual basis on which [a] representation is made." H.B. 2601, 55th Legislature, 2d Reg. Sess., § 36-795.01 (Ariz. 2022). The federal government, Pennsylvania, and New Jersey have not banned the sale of kratom or regulated its distribution; however, bills were introduced in the New Jersey and Pennsylvania legislatures, as a result of the dangerous nature of the substance.[12] The proposed New Jersey law would have criminalized the sale of kratom in the state. *See* A.B. 3797, 221st Legislature (N.J. 2024).

15. Additionally, the Food and Drug Administration ("FDA") has not approved kratom for the treatment of any medical condition or as a health or dietary supplement.[13] As of July 2025, the FDA stated that "7-OH is not lawful in dietary supplements and 7-OH cannot be lawfully added to conventional foods."[14]

---

*Kratom Use Disorder as a Gateway to an Opioid Use Disorder*, European Psychiatry, Vol. 66, Special Issue.

[12] Pennsylvania House Democratic Caucus, Kinkead, Prokopiak announce bill to regulate opioid-mimicking plant, Pennsylvania House Democratic Caucus, December 5, 2025, https://www.pahouse.com/InTheNews/NewsRelease/?id=141325 (last visited February 4, 2026).

[13] U.S. Food & Drug Administration, FDA and Kratom, https://www.fda.gov/news-events/public-health-focus/fda-and-kratom, (last visited February 9, 2026).

[14] U.S. Food & Drug Administration, FDA Takes Steps to Restrict 7-OH Opioid Products Threatening American Consumers (July 29, 2025), https://www.fda.gov/news-events/press-announcements/fda-takes-steps-restrict-7-oh-opioid-products-threatening-american-consumers.

{00265842 }

**Defendant's Sale of Kratom-Containing Beverages**

16. Defendant distributes its Beverages online at its website shopcbdkratom.com and in retail stores in New York, Texas, Pennsylvania, Illinois, and Missouri. There are at least four (4) retail stores in Philadelphia and the neighboring suburbs. There is no retail store in New Jersey; however, residents of New Jersey frequently shop at the Philadelphia area stores to obtain kratom-containing products, or shop online at Defendant's website, which permits purchasers to pick up online purchases at retail locations.

17. Defendant manufactures canned Beverages under CBD Kratom's house brand the "Korthal's Collection.[15]" Each can typically retails for $12.00 and is sold individually or in packs, e.g., four-pack, six-pack. Upon information and belief, the Beverages are the most popular items sold at the CBD Kratom stores in and around Philadelphia. The Beverages contain 7-OH.

18. CBD Kratom markets and labels the Beverages as safe, promoting them as beneficial for health and energy boosting for daily activities such as exercise. On its website, CBD Kratom suggests the Beverages are not addictive or dangerous at all, describing them as merely "habit forming, like caffeine or sugar."

19. CBD Kratom retail staff in the Philadelphia area retail stores are aware or should be aware that the Beverages are not just "habit forming" but addictive. In fact, it is common for the same customers to return to the stores **daily** to purchase large quantities of the Beverages for personal use.

20. The nutritional content table on the back label of the Beverages calls them a "supplement," leading any reasonable consumer to believe that the Beverages are indeed a health and wellness supplement.

---

[15] "Korthal's Collection" is a trademark owned by Defendant MNG 2005, Inc.

{00265842 }

21. This intentional obfuscation is consistent with how the Beverages are labeled. The front and back labels on the Beverages are conspicuous in their failure to identify any risks associated with the consumption of the Beverages or kratom and 7-OH itself. The labels do not identify any negative health effects associated with use, fail to specify how to consume the Beverages safely, and offer no indication whatsoever that the Beverages could be dangerous. Two exemplar Beverage labels are displayed below.



**Product Label in Entirety**

{00265842 }



**Product Label in Entirety**

22. The front labels on these Beverages promise that the "effects" of the Beverages are "increased focus, mood elevation, and energy boost," suggesting falsely that the Beverages are a health or energy drink or supplement, which can be consumed regularly.

23. The warning on the back of both Beverage labels states:

> Those with a medical condition or taking any medications should consult with a physician prior to use. Do not use if you are under the age of 18 or 21, depending on state and local laws. Do not use if you are pregnant or lactating. Do not combine or mix with alcohol. Use caution while operating machinery. Discontinue use if you experience any negative effects. Seek medical assistance in case of an emergency. These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease. KEEP OUT OF REACH OF CHILDREN AND PETS.

{00265842 }

24. Any description of risks on the front or back labels is vague or nonexistent. For example, the warning states, "those with a medical condition or taking medications should consult with a physician prior to use" but fails to specify that the Beverage consumption itself may result in medical conditions which require treatment with medication. The labels also purport to discourage use by people under the age of 18 or 21 "depending on state laws," providing no other information on which age restriction might apply.[16]

25. The warning further states, "discontinue use if you experience any negative effects." But neither label describes or suggests what "negative effects" a consumer should look for, such as insomnia, tremors, heart palpitations, nausea, or vomiting. Indeed, the "effects" listed on the front labels can only be described as positive. Notably, the labels do not explain that repeated, prolonged, or cessation of use may pose serious health consequences, such as addiction and withdrawal.

26. In other words, neither product label adequately warns consumers that the Beverages can be addictive, dangerous, and unhealthy. They further fail to specify that they are not for routine consumption and contain 7-OH, using miniscule print in the top right corner to identify the presence of 7-OH by its chemical name only, offering no indication to an otherwise unaware consumer that the compound itself is extremely dangerous.

**Plaintiff Eichhorn's Purchases from Defendant and Injuries**

27. In or around March or April of 2024, Plaintiff Eichhorn worked in Philadelphia as a building engineer when he saw a sign advertising Defendant's Beverages as an "energy boosting

---

[16] There is a small QR code on both Beverages' back labels. The one on the lemon tea label directs users to a Korthal's Collection webpage and merely repeats the so-called "warning" that is displayed next to the QR code on the back label. The QR code on the strawberry kiwi label directs users to a webpage where they can purchase the product. Neither QR-linked webpage contains information about the dangers of consuming kratom or the Beverages.

{00265842 }

pre-workout" supplement, displayed outside the CBD Kratom location at 212 S 17th Street in Philadelphia, Pennsylvania.

28. Plaintiff Eichhorn purchased the above-referenced kratom-containing Beverages: the Korthal's Collection No. 539 Kratom Seltzer in Lemon Tea flavor and No. 573 Kratom Soda in the Strawberry Tea Flavor. Based on the product labels as displayed above, he had a reasonable belief that the Beverages were not only safe but natural and healthy. Upon drinking his first Beverage, Plaintiff Eichhorn experienced a feeling of euphoria.

29. Soon, Plaintiff Eichhorn developed a tolerance to single cans of the Beverages and began purchasing them daily and in large quantities to achieve the same euphoric feeling. CBD Kratom further enticed Plaintiff Eichhorn to purchase more of the Beverages with its rewards system, offering free or discounted Beverages the more he purchased.

30. By Summer 2024, Plaintiff Eichhorn was drinking up to sixteen (16) Beverage cans a day, spending approximately $200 **a day** at various CBD Kratom stores in Philadelphia or at the cbdkratom.com website, which permitted him to purchase the Beverages online and pick them up at CBD Kratom stores in Philadelphia.

31. Around this time, Plaintiff Eichhorn realized he had developed a kratom addiction and tried to stop drinking the Beverages on multiple occasions. Each time, upon stopping, Plaintiff Eichhorn experienced painful withdrawal symptoms, including but not limited to restlessness, depression, diarrhea, and vomiting. To avoid the withdrawal symptoms and continue functioning well enough to go to work, Plaintiff Eichhorn had no choice but to resume drinking the Beverages. When he did, his withdrawal symptoms stopped. But his addiction worsened.

32. In or around March 2025, Plaintiff Eichhorn entered a formal drug rehabilitation program to treat the kratom addiction caused by consumption of the Beverages. He was treated

{00265842 }

with the medication suboxone for withdrawal. He successfully completed the rehabilitation program and was discharged to an intensive outpatient program, which he also completed.

33. Plaintiff Eichhorn would never have purchased the Beverages at any CBD Kratom store or online had he seen any warning or indication on the Beverage labels that they were dangerous, harmful, addictive, unhealthy, or unsafe in any way.

34. More specifically, Plaintiff Eichhorn would never have purchased the Beverages if the Beverage labels had contained a warning that the Beverages contained an addictive substance, which could cause detrimental physical and mental side effects, such as but not limited to addiction and withdrawal upon continued use or cessation of use, respectively.

35. As a direct result of Defendant's failure to inform him of the dangers of kratom and kratom-containing Beverages on its Beverage labels, Plaintiff Eichhorn spent approximately $60,000 total on Beverages at the CBD Kratom website and retail locations in Philadelphia.

## CLASS ACTION ALLEGATIONS

36. Plaintiff Eichhorn seeks to represent the following Classes, pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3), defined as:

> **Pennsylvania Class:** All persons who reside in Pennsylvania and/or any persons residing in any state who purchased a beverage from Defendant as defined herein from a CBD Kratom retail store located in Pennsylvania and/or at the CBD Kratom website shopcbdkratom.com for pick up at a CBD Kratom retail store in Pennsylvania in the two (2) years prior to and including the filing of this Complaint.
>
> **New Jersey Class:** All persons who reside in the State of New Jersey who purchased a Beverage as defined herein from a CBD Kratom retail store and/or at the CBD Kratom website shopcbdkratom.com for pick up at any CBD Kratom retail store in the two (2) years prior to and including the filing of this Complaint.

37. The members of the Classes are so numerous and geographically dispersed that the joinder of all members is impractical, given the nature of the claims and Defendant's expansive retail operations. While the exact number of people affected is unknown, Plaintiffs believe that the Classes number in the thousands.

38. There are substantial questions of law and fact common to the Classes, which predominate over any questions of law or fact affecting only individual members of the Classes. Such common questions include but are not limited to:

   a. Whether Defendant breached implied or express warranties under Pennsylvania and New Jersey Law;

   b. Whether Defendant failed to adequately warn Plaintiff and the Class members that the Beverages posed a health hazard;

   c. Whether Defendant was unjustly enriched;

   d. Whether Defendant violated the New Jersey Consumer Fraud Act;

   e. Whether Defendant negligently failed to warn Plaintiffs and the Class Members of the dangers inherent to the Beverages, including regarding the presence and potency of 7-OH;

   f. Whether Defendant knew or should have known that the Beverages posed significant health risks, such that they should not have characterized the Beverages as healthy or a supplement;

   g. Whether Plaintiff and the Class members are entitled to money damages and the measure of damages; and

   h. Whether Plaintiff and the Class members are entitled to injunctive or declaratory relief.

39. Plaintiff Eichhorn's claims are typical of the claims of the Class members. Plaintiff Eichhorn and all Class members were affected by Defendant's conduct described above and assert the same claims for monetary and equitable relief.

40. Plaintiff Eichhorn and his counsel will fairly and adequately represent the interests of the Class members. Plaintiff Eichhorn has no interest antagonistic to, or in conflict with, the interests of the Class members. Plaintiff Eichhorn's attorneys are experienced in the prosecution of consumer protection class actions and other complex commercial litigation.

41. Class certification under Rule 23(b)(2) is appropriate because the Defendant acted or refused to act on grounds generally applicable to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Classes as a whole.

42. Class certification under Rule 23(b)(3) is appropriate because Defendant has injured and harmed the Classes in the same manner, through the same conduct, and questions of law or fact common to the Classes members predominate over any questions affecting the individual members. A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Negligent Failure to Warn
### (On Behalf of Plaintiff and the Pennsylvania and New Jersey Classes)

43. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

44. Plaintiff Eichhorn brings this claim on behalf of the Pennsylvania class and the New Jersey class.

45. Defendant manufactures, markets and retails the Beverages at its CBD Kratom retail stores and online. It owed Plaintiff Eichhorn and the proposed a class a duty to place warnings on the Beverage labels that the kratom-containing products posed a risk of various health consequences including but not limited to, anxiety, depression, nausea, diarrhea, heart palpitations, insomnia, addiction, and in rare cases death.

46. Defendant further owed a duty to Plaintiff Eichhorn and the proposed class to state on its product labels that the Beverages contained the potent substance 7-OH; were not for routine consumption; and that repeat or excess consumption and sudden cessation could cause serious withdrawal symptoms, including but not limited to tremors, sweating, dehydration, palpitations, loss of appetite and sleep.

47. As a direct and proximate result of Defendant's failure to warn Plaintiff and the proposed classes of the risks of consumption on the Beverage labels, Plaintiff Eichhorn and the proposed Classes were harmed in an amount to be proven at trial.

### COUNT II
### Violation of the New Jersey Consumer Fraud Act ("CFA")
### N.J.S.A. § 56:8-2
### (On Behalf of Plaintiff and the New Jersey Classes)

48. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

49. The New Jersey CFA was enacted and designed broadly to protect consumers against unfair, deceptive and fraudulent business practices. N.J.S.A. §56:8-1 *et seq*.

50. N.J.S.A. §56:8-2 states:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . [.]

51. Plaintiff, members of the Class, and Defendant are "persons" within the meaning of the CFA. N.J.S.A. § 56:8-1(d).

52. The Beverages sold by Defendant are "merchandise" within the meaning of the CFA, and Plaintiffs and other members of the Class are "consumers" within the meaning of the CFA and, thus, are entitled to the statutory remedies made available in the CFA. *See Automann, Inc. v. Dayco Prods.*, No. 20-14541, 2021 U.S. Dist. LEXIS 142947, at *7 (D.N.J. July 30, 2021) (citing *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006)).

53. Defendant, through its advertisements and packaging, including on the Beverage labels and at the cbdkratom.com pages for the Beverages, used unconscionable commercial practices, deception, fraud, concealment, false promises, and misrepresentations, in violation of the CFA, in connection with the marketing and sale of the Beverages.

54. Specifically, Defendant engaged and continues to engage in conduct that is intended to deceive consumers acting reasonably under similar circumstances. Defendant represents that its Beverages are safe and healthy, stating outright they are supplements and meant to enhance mood, energy, and focus. Yet Defendant does not notify purchasers of the detrimental health risks associated with Beverage consumption and cessation of consumption, including but not limited to nausea, vomiting, insomnia, addiction or dependence, or regarding the presence of the potent agent 7-OH.

55. As a direct result, Plaintiff Eichhorn and Classes suffered ascertainable losses and are entitled to compensatory damages in the form of the purchase price of the Beverages, which they would not have otherwise spent, as well as treble damages threefold and attorney's fees and costs. N.J.S.A. §§ 56:8-2.11, 56:8-19.

56. In sum, Defendant knowingly concealed and omitted material facts to the Plaintiffs and Members of the Classes regarding the benefits, health, and safety of the Beverages. These

{00265842}

deceptive acts and omissions caused Plaintiffs and members of the Class to sustain damages in an amount to be proven at trial.

## COUNT III
### Breach of Implied Warranty of Merchantability
### 13 Pa. C.S.A. § 2314
### (On Behalf of Plaintiff and the Pennsylvania Class)

57. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

58. Defendant impliedly warranted or promised that its Beverages were safe and healthy for consumption, non-dependence forming or addictive, and posing no risk to an individual's physical or mental health or safety. Indeed, the front label on the Beverages states, "the effects are increased focus, mood elevation, [and] energy boost." Based on these representations, Plaintiff Eichhorn and the proposed class reasonably believed that the Beverages were, in fact, healthy products or even exercise and health or energy supplements.

59. As a direct result of Defendant's breach of this implied warranty and promise of safety and/or health benefit, Plaintiffs and the proposed class were harmed. *Id.* § 2314 (3-4).

60. Specifically, Plaintiffs and the proposed class suffered losses in the form of the purchase price of the Beverages, which they would not have otherwise spent, and damages in an amount to be proven at trial.

## COUNT IV
### Breach of Implied Warranty for Fitness for a Particular Purpose
### N.J.S.A. § 12A:2-314
### (On Behalf of Plaintiff and the New Jersey Class)

61. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

62. CBD Kratom warranted or promised on its beverage labels and the Beverage pages

16

{00265842 }

on the cbdkratom.com website that its Beverages were meant for "focus" and "energy," going so far as to deem them "supplements" on the nutritional labels. These representations would lead a reasonable consumer to believe that the Beverages were health supplements or energy drinks or substantially similar to energy drinks, fit for that ordinary purpose. *Id*. §§ (2)(c), (f).

63. CBD Kratom failed to warn consumers that the Beverages pose numerous health risks, including painful physical and mental symptoms as described herein, and the potential for addiction and withdrawal, thereby breaching its promise and warranty to consumers about the energy-enhancing effects of the product and the inherent safety of the Beverages.

64. As a result, Plaintiff Eichhorn and the New Jersey Class were harmed in an amount to be proven at trial.

65. Plaintiff Eichhorn and the New Jersey Class are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff and the New Jersey Class pursuant to Federal Rule of Civil Procedure 23.

66. Furthermore, Defendant were put on notice and had actual knowledge of the breach of warranty as a result of a substantially similar complaint filed against them. *See Low v. MNG 2005, Inc*., No. 1:25-cv-4884 (E.D.N.Y September 3, 2025); *Vaca v. MNG 2005, Inc*., No. 1:25-cv-010106 (E.D.N.Y. July 29, 2025). Nevertheless, Plaintiff Eichhorn and the Classes have provided concurrent notice to Defendant.

## COUNT V
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Pennsylvania and New Jersey Classes)**

67. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

68. Plaintiff Eichhorn, and each member of the Pennsylvania and New Jersey Classes, formed a contract with Defendant at the time they purchased the Beverages. The terms of the contract included the promises and affirmations of fact made by Defendant on the Products' labeling and through marketing and advertising, as described above. This labeling, marketing, and advertising constitute express warranties and became part of the basis of bargain and are part of the standardized contract between Plaintiff and the members of the Classes and Defendant.

69. Plaintiff Eichhorn and the Classes performed all conditions precedent to Defendant's liability under this contract when they purchased the Beverages.

70. Defendant breached express warranties about the Beverages and their qualities because Defendant's statements about the Beverages were misleading and/or false and the Beverages do not conform to Defendant's affirmations and promises regarding energy and focus, or to Defendant's characterization of the Beverages as a "supplement," as described above.

71. Had they known the true nature of the Beverages, Plaintiff Eichhorn and the members of the Classes would not have purchased the Beverages.

72. As a result of Defendant's breach of warranty, Plaintiff Eichhorn and each of the members of the Classes have been damaged in the amount of the purchase price of the Beverages and any consequential damages in an amount to be determined at trial.

73. Plaintiff Eichhorn and the Classes are entitled to bring this class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiff Eichhorn and the Classes pursuant to Federal Rule of Civil Procedure 23.

74. Defendant was put on notice and had actual knowledge of the breach of warranty as a result of a substantially similar complaint filed against it. *See Low v. MNG 2005, Inc.*, No.

1:25-cv-4884 (E.D.N.Y September 3, 2025); *Vaca v. MNG 2005, Inc.*, No. 1:25-cv-010106 (E.D.N.Y. July 29, 2025). Nevertheless, Plaintiff Eichhorn and the Classes have provided concurrent notice to Defendant.

## COUNT VI
### Unjust Enrichment
**(On Behalf of Plaintiff and the Pennsylvania and New Jersey Classes)**

75. The allegations in the preceding paragraphs are incorporated as though fully set forth herein.

76. In the alternative, Defendant was unjustly enriched under Pennsylvania law. Plaintiff Eichhorn and the proposed Classes conferred a benefit on the Defendant in the form of the purchase price of the Beverages.

77. This benefit was unjustly conferred because Plaintiff Eichhorn and the proposed Classes would not have purchased the Beverages had Defendant placed adequate warnings on the product labels regarding the dangers and risks of consuming such kratom-containing products, particularly 7-OH containing products.

78. Defendant improperly retained the benefits conferred because (a) it chose to exclude pertinent information about the health and safety of the Beverages and (b) instead chose to represent to purchasers on the Beverage labels that the Beverages were healthy and "best for mood, focus, and energy."

79. As a result, Plaintiff Eichhorn and the proposed Classes sustained damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Eichhorn on behalf of himself and all others similarly situated, prays for judgment and relief as follows:

a.  certification of the Classes defined above under Fed. R. Civ. P. 23(b)(2) and 23 (b)(3);

b.  declaratory and injunctive relief for Plaintiffs and the Classes;

c.  compensatory and treble damages for Plaintiffs and the Classes in amounts to be ascertained at trial;

d.  an award of attorneys' fees and cost of suit; and

e.  all further and other relief that the Court deems just and appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) of all issues so triable.

Dated: March 4, 2026

/s/*Aarthi Manohar*
Joseph C. Kohn
Aarthi Manohar
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
jkohn@kohnswift.com
amanohar@kohnswift.com

*Attorneys for Plaintiff and the proposed Plaintiff Classes*